1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   MAXIMO BANUELOS,                    )   Case No.: 1:12-cv-00413 - JLT
                                        )
12              Plaintiff,               )   ORDER REMANDING THE ACTION PURSUANT
                                        )   TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13        v.                             )
                                        )   ORDER DIRECTING ENTRY OF JUDGMENT IN
14   MICHAEL J. ASTRUE,                  )   FAVOR OF PLAINTIFF MAXIMO BANUELOS
     Commissioner of Social Security,    )   AND AGAINST DEFENDANT MICHAEL J.
15                                       )   ASTRUE, COMMISSIONER OF SOCIAL
                                        )   SECURITY
16              Defendant.               )
                                        )
17   _____ )

18        Maximo Banuelos ("Plaintiff") asserts he is entitled to disability insurance benefits and

19   supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

20   administrative law judge ("ALJ") erred in evaluating the evidence, and seeks review of the decision

21   denying his claims for benefits.  For the reasons set forth below, the administrative decision is

22   **REMANDED**.

23                        **PROCEDURAL HISTORY**

24        Plaintiff filed applications for disability insurance benefits and supplemental security income

25   on October 28, 2008, alleging disability beginning October 10, 2006.  (Doc. 11-3 at 11).  The Social

26   Security Administration denied his claims initially and upon reconsideration.  *Id.*  After requesting a

27   hearing, Plaintiff appeared at the hearing on September 8, 2010.  *Id.* at 11, 49.  The ALJ determined

28   Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on

                                          1

November 8, 2010.  (Doc. 11-3 at 19).  Plaintiff requested review by the Appeals Council of Social Security, which denied Plaintiff's request on January 20, 2012.  *Id.* at 2-7.  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on March 20, 2012, seeking review of the Commissioner's decision.  (Doc. 1).  On October 30, 2012, Plaintiff filed his opening brief, asserting the ALJ erred in finding his subjective complaints lacked credibility and failing to find a closed period of disability.  (Doc. 12).  Defendant filed a brief in opposition on November 29, 2012, asserting the ALJ's opinion was supported by substantial evidence.  (Doc. 13).  Plaintiff did not file a reply brief.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f), 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 404.927, 416.927.

**A.**     **Relevant Medical Opinions**

Dr. Abbas Mehdi performed a consultative examination on September 7, 2007.  (Doc. 11-8 at 25-28).  Dr. Mehdi noted Plaintiff was "450 pounds and . . . known to have a history of gastric bypass surgery when he was age 15."  *Id.* at 25.  Plaintiff reported he had "knee pain for the past 9-10 years and over the years has been progressively been getting worse."  *Id.*  In addition, he informed Dr. Mehdi that he had to lock his knees to stand or he would fall backwards because of his obesity.  *Id.*  Dr. Mehdi observed this was not a normal spine position, because locking his knees was "producing a constant and severe strain on his back, knees and ankles."  *Id.*  Further, Dr. Mehdi noted Plaintiff walked "with a slightly unstable and antalgic gait" without an assistive device.  *Id.* at 26.  Plaintiff demonstrated reduced range of motion in his cervical spine, lumbar spine, his, knees, and ankles.  *Id.* at 26-27.  Based upon the examination, Dr. Mehdi opined: "The claimant can lift and carry less than

3

10 pounds occasionally and frequently.  The claimant can stand and walk less than two hours out of an eight hour day.  The claimant can sit less than six hours in an eight hour day."  *Id.* at 28.

On September 22, 2007, Dr. Ekram Michiel performed a consultative psychiatric examination. (Doc. 11-8 at 31-33).  Plaintiff reported he was depressed, unable to handle pressure or concentration, and would "get closed in."  *Id.* at 31.  Dr. Michiel tested Plaintiff's memory, and noted he "could recall three out of three objects in one minute, and remembered three of the objects in five minutes." *Id.* at 32.  In addition, Dr. Michiel observed Plaintiff's "[t]hought process was goal-directed" and "[t]hought content was not delusional."  *Id.*  "Based upon the evaluation and observation throughout the interview," Dr. Michel opined Plaintiff was "able to maintain attention and concentration and carry out one or two step simple job instructions."  *Id.* at 33.  However, Plaintiff was "unable to carry out an extensive variety of technical and/or complex instructions."  *Id.*

Dr. Shireen Damania performed a psychiatric evaluation on November 15, 2008.  (Doc. 11-9 at 90-93).  Dr. Damania reviewed records, including a discharge summary from Madera Community Hospital dated May 30, 2007, which noted Plaintiff had attempted suicide with multiple drugs.  *Id.* at 90.  Plaintiff reported he had problems with anger as a child and was on "numerous antidepressants." *Id.* at 91.  Dr. Damania observed Plaintiff demonstrated "no evidence of a thought disorder," hallucinations, or delusions.  *Id.* at 92.  In addition, Plaintiff's attention span was normal and he "recalled three out of three objects in three minutes."  *Id.*  Therefore, Dr. Damania opined Plaintiff was "able to understand, carryout, and remember three-and four-step job instructions in a work like setting."  *Id.* at 93.

Dr. Rustom Damania conducted an internal medicine evaluation on December 20, 2008.  (Doc. 11-9 at 59-64).  Dr. Damania noted Plaintiff used a cane and reported "chronic right knee pain and back pain for approximately two years."  *Id.* at 59-60.  Further, Plaintiff "complain[ed] of numbness in both wrists, right knee pain, back pain, hypertension, diabetes, morbid obesity, positional peripheral edema, left shoulder pain and sleep apnea."  *Id.* at 59.  According to Dr. Damania, Plaintiff's range of motion in his back was reduced, but within normal limits in his upper and lower extremities.  *Id.* at 62-63.  In addition, Dr. Damania found Plaintiff's strength was "5/5 in all extremities."  *Id.* at 63.  Dr. Damania concluded Plaintiff "should be able to lift and carry 10 pounds occasionally and 10 pounds

frequently;" "sit six hours;" and "stand and walk two to four hours out of an eight hour work day with normal breaks." *Id.* at 64.  Further, he opined Plaintiff did not require the use of an assistive device for ambulation.  *Id.*

On January 6, 2009, Dr. Bobba completed a physical residual functional capacity assessment. (Doc. 11-9 at 65-69).  She determined Plaintiff had the ability to lift and carry ten pounds occasionally and frequently, stand and walk at least two hours in an eight-hour day, and sit about six hours in an eight-hour day.  *Id.* at 66.  Dr. Bobba opined Plaintiff required the use of an assistive device "for long distances and uneven terrain."  *Id.*  In addition, Plaintiff was limited to "occasional" postural limitations such as climbing, balancing, stooping, kneeling, crouching, and crawling.  *Id.*  Dr. Bobba concluded Plaintiff did not have manipulative, visual, communicative or environmental limitations. *Id.* at 67-68.

Dr. Luu completed a psychiatric review on January 9, 2009, and opined Plaintiff did not have a severe mental impairment.  (Doc. 11-9 at 71).  This assessment was affirmed by Dr. John Bonner on March 23, 2009.  (Doc. 11-10 at 68).

Plaintiff's treating physician, Dr. Louis Hernandez, completed a physical residual functional capacity questionnaire on September 7, 2010.  (Doc. 11-10 at 121-24).  Dr. Hernandez opined Plaintiff had osteoarthritis in his knees and right hand pain.  *Id.* at 121.  He noted Plaintiff reported depression and "severe pain making it hard for him to walk."  *Id.* at 121-22.  In addition, Dr. Hernandez opined Plaintiff's pain would "occasionally" interfere with the attention and concentration required to perform even simple work tasks.  *Id.* at 122.  According to Dr. Hernandez, Plaintiff was able to walk one city block without rest and sit, stand and walk at least six hours in an eight-hour work day.  *Id.* at 122-23. On March 30, 2011, Dr. Hernandez prescribed a wheelchair for Plaintiff.  *Id.* at 126.

**B.    Administrative Hearing**

Plaintiff and a vocational expert appeared for a hearing before the ALJ on September 8, 2010. (Doc. 11-3 at 49).  Plaintiff's counsel reported a treating physician was in the process of completing a medical source statement.  *Id.* at 52.  The ALJ stated he would allow the record to remain open for forty-five days to receive the physician's statement.  *Id.* at 53.  According to the ALJ, he had conflicting reports from consultative examiners, because one opined Plaintiff was disabled and the

1    other opined Plaintiff had the ability to do sedentary work.  *Id.* at 54.  The ALJ opined there was

2    "nothing" Plaintiff could tell him when reporting his subjective symptoms.  *Id.* at 55-56.  As a result,

3    the administrative hearing was cancelled.

4    **C.      The ALJ's Findings**

5            Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial

6    gainful activity since the alleged onset date of October 10, 2006.  (Doc. 11-3 at 13).  Second, the ALJ

7    found Plaintiff had "the medically determinable severe impairments of morbid obesity (sp 90's gastric

8    bypass) with obstructive sleep apnea apparently controlled by bi-pap, "mild" bilateral osteoarthritis

9    knees, right greater than left, and depressive disorder, [not otherwise specified] . . ." *Id.* at 12.  These

10   impairments did not meet or medically equal a listing.  *Id.* at 16.  Next, the ALJ found Plaintiff had

11   "the residual functional capacity[1] to perform the essentially full range of 'sedentary' work."[2]  *Id.*  With

12   this RFC, Plaintiff was unable to perform past relevant work.  *Id.* at 18.  However, the ALJ determined

13   "there *are* jobs that exist in significant numbers in the national economy" that Plaintiff could perform.

14   *Id.* at 19 (emphasis in original).  Therefore, the ALJ concluded Plaintiff was not disabled as defined by

15   the Social Security Act.  *Id.*

16                                   **DISCUSSION AND ANALYSIS**

17           In determining credibility, an ALJ must determine first whether objective medical evidence

18   shows an underlying impairment "which could reasonably be expected to produce the pain or other

19   symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell*

20   *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if there is no evidence of malingering, the

21   ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing

22   reasons for rejecting his subjective complaints.  *Id.* at 1036.  Consequently, an adverse credibility

23   determination must be based on clear and convincing evidence where there is no affirmative evidence

24

25           [1] The residual functional capacity ("RFC") is a determination of what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545.

26

27           [2] Under the Regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).  In addition, through sedentary work involves sitting, "a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

28

6

of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

**A.      The ALJ erred when making his credibility determination.**

Plaintiff asserts "the ALJ improperly assessed his subjective symptom testimony" because "the ALJ did not conduct the mandated two step analysis properly." (Doc. 12 at 8-9). Plaintiff argues, "an ALJ who does not actually take a claimant's testimony, and in fact states that it is not needed or wanted cannot comply with the requirements of law." *Id.* at 10. According to Plaintiff, "[a]t best," the ALJ rejected his credibility "because it lacks support in the objective medical evidence." *Id.*

The ALJ reviewed Plaintiff's statements made to physicians to determine his subjective complaints. (Doc. 11-3 at 18). The only statement made by the ALJ regarding Plaintiff's credibility is: "[A]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* Defendant asserts the ALJ's credibility determination is supported by the objective medical evidence, treatment received, inconsistent statements, and daily activities. (Doc. 13 at 6-11).

Significantly, the Court is constrained to review only the reasoning asserted by the ALJ, and cannot consider post hoc reasoning by Defendant. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts"). The ALJ does not identify inconsistent statements or treatment received as reasons for finding Plaintiff lacked credibility. Accordingly, these cannot support the adverse credibility determination.

Further, Plaintiff's daily activities do not support the adverse credibility determination. The Ninth Circuit has made clear that the fact a claimant engages in normal daily activities "does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Court continued, "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Rather, an ALJ must make a determination as to whether daily activities are transferrable to a workplace. *See, e.g., Stubbs-*

*Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (the ALJ determined claimant's activities of daily living "tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis"). The ALJ notes Plaintiff "reported that he was able to shower and dress himself, cook for himself, do the laundry, shop with his mother's help . . ., pay bills, count change, handle bank accounts, and pay attention 'for hours,' following instructions, 'fine.'" (Doc. 11-3 at 18). However, the ALJ failed to find these activities transferable to a workplace. Indeed, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Consequently, the ALJ's findings regarding Plaintiff's activities are insufficient to constitute clear and convincing evidence sufficient to discount Plaintiff's credibility.

Finally, although the ALJ conducts a review of the objective medical evidence, he fails to identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). In citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Thus, the ALJ's summary of the objective medical evidence does not support his decision to reject Plaintiff's subjective complaints.[3]

The ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Thus, the credibility determination cannot be upheld because the ALJ failed to set forth clear and convincing reasons supported by substantial evidence in the record.

///

///

---

[3] Notably, even if the ALJ properly evaluated the objective medical evidence with regard to Plaintiff's credibility, "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence cannot form the sole basis for discounting pain testimony").

**B.       Remand is appropriate in this matter.**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).  Also, the Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony could be credited as true, and remand is not appropriate.  *Lester*, 81 F.3d at 834 (9th Cir. 1996); *Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true).  A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy.  *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . .").  Notably, although the ALJ failed to properly reject Plaintiff's credibility using the proper legal standards, it is not clear that Plaintiff would be disabled if his testimony were credited as true.  Therefore, the Court will order the matter remanded for the ALJ to provide sufficient findings.

## CONCLUSION AND ORDER

For all these reasons, the Court concludes the ALJ erred in assessing Plaintiff's credibility as related to his subjective complaints.  As a result, the administrative decision should not be upheld by the Court, and the matter should be remanded for further proceedings.  *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on this matter, it will not address the remaining issue raised by Plaintiff in his opening brief.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and

2.      The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Maximo Banuelos and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  __December 19, 2012__          _____/s/ **Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE

10